## Commonwealth v. Crawford

*Merrill W. Kerlin*, for Commonwealth.

*George S. Black*, for defendant.

MACPHAIL, P. J., September 1, 1967.—On February 28, 1966, a cold, wet and foggy day, a motor vehicle

operated by one Walter Duda was struck from the rear by another motor vehicle on Interstate Route 70, in Fulton County. The operator of the other vehicle failed to stop at the scene. At the time of impact, Mr. Duda saw a car pass him from the rear, and identified it as a pink Cadillac, "about a 1958 model". He assumed this was the vehicle which had struck him.

The State Police found some pieces of glass at the scene of the accident which, apparently, had been broken from the headlight of the car which struck Mr. Duda's vehicle.

In the course of the subsequent investigation, the Pennsylvania State Police found a pink Cadillac on the same day, in the rear of the Bruce A. Crawford residence, which motor vehicle had some damage to its front, including damage to one headlight, where some glass was missing. The investigating officer found Mr. Crawford and questioned him concerning the automobile. Some of the questioning took place at defendant's residence, but some also occurred at the police barracks where defendant was taken in a police car. The investigating officer testified that he had advised defendant of his constitutional rights before he asked defendant any questions.

In his statement to the officer on the date of the accident, defendant said he had not been involved in any accident on February 28th, and that the damage to his car resulted from an accident which had occurred one week earlier.

The following day, the investigating officer returned to the Crawford residence and talked to Crawford again at his residence. The officer said he reminded defendant the second time of his constitutional rights and, as a result of the questioning on that day, defendant stated that he had been involved in an accident on the afternoon of the previous day, and that the

reason he had not stopped was that the operator of the vehicle which he had struck motioned him to go on.

Subsequently, defendant was arrested for failing to stop at the scene of an accident. The case was tried by a jury before the late Judge W. C. Sheely. Defendant's statements to the police were admitted into evidence at the trial of the case over the objections of defense counsel. The jury returned a verdict of guilty, and defendant has filed motions in arrest of judgment and for a new trial.

The motion in arrest of judgment must be denied. Defendant argues that the statements made by defendant to the police officer were inadmissible and that without that evidence the record is insufficient to sustain the verdict. Defendant's position is without merit. In passing upon a motion in arrest of judgment, the sufficiency of the evidence must be evaluated upon the entire trial record. "All evidence actually received must be considered, whether the trial rulings thereon were right or wrong": Commonwealth v. Tabb, 417 Pa. 13 (1965). The trial record in this case is sufficient to justify the verdict.

In the motion for a new trial, defendant raises the issue of whether or not the warnings given by the officer to defendant concerning his constitutional rights were proper and adequate, in the light of recent decisions by the United States Supreme Court. Much of defendant's argument on the constitutional issue is based upon the guidelines set forth by the United States Supreme Court in Miranda v. Arizona, 384 U. S. 436, 16 L. Ed. 2d 694 (1966). The principles of that case apply to the one now before us, since the trial of defendant began September 19, 1966, which was after the date of the Miranda decision. The benefits of the Miranda case have been held to be available to persons whose *trials* began after June 13, 1966:

Johnson v. New Jersey, 384 U. S. 719, 16 L. Ed. 2d 882 (1966). While it may not be necessary to do so, in light of the many cases which have followed the Miranda decision, we may note that the court briefly stated its rulings in that case as follows:

"The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination".

The court went on to say that "custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way". The "procedural safeguards" were specifically spelled out by the court as the principal part of its opinion, and such of those as are applicable will be discussed hereinafter.

As applied to the case now before us, the Miranda decision means simply that none of the statements made by Crawford were admissible if they were taken in the course of "custodial interrogation", unless the procedural safeguards enunciated by the Supreme Court in the Miranda case were fully explained to defendant, and he intelligently and knowingly waived the constitutional protection afforded him. Defendant was without counsel on the occasion of either interrogation.

The investigating officer advised defendant of his constitutional rights, in the following language:

"I advised him of his constitutional rights—that he did not have to tell me or give me any statement. I advised him if he did make a statement, it could be used against him in a court of law, and I also advised him if he wished to have an attorney present before he gave me any statement, he could do so".

Defendant said he didn't want to have an attorney present and that he would give a statement. Defendant's counsel now argues that the officer's advice to defendant, concerning defendant's constitutional safeguards, was inadequate, because (a) the officer did not specifically tell defendant that anything he said could *and would* be used against him, and (b) the officer did not specifically tell defendant that, if he was indigent, the court would appoint counsel for him. Admittedly, neither of these warnings were given and, admittedly, the Miranda case requires that both be given: Commonwealth v. Medina, 424 Pa. 632 (1967). On the other hand, it must be noted that the officer's warnings were sufficient under the guidelines set forth in Escobedo v. Illinois, 378 U. S. 478, 12 L. Ed. 2d 977 (1964). These were the only guidelines the officer had available to him on February 28, 1966, the date on which the questioning began. Nevertheless, under the ruling of Johnson v. New Jersey, supra, notwithstanding the fact that the officer had no way of knowing what the law was going to be when the trial began, if, in fact, the trial began after June 22, 1966, the date of the Miranda decision, the officer was bound by the Miranda rules.* What our personal opinion of such a situation may be is immaterial. The United States Supreme Court has spoken specifically to this point, and both we and the trial court are bound by that decision. We are compelled to hold that the

---

* The unfortunate result here is precisely the situation the Supreme Court was apparently seeking to avoid. See page 892, 16 L. Ed. 2d. However, by holding that "the date the trial commences" is the cutoff date, the court has actually made its ruling retroactive to *interrogations* which took place before Escobedo or Miranda, as the case may be, but where *trials* did not begin until after those rulings were handed down. See Schwartz, "Retroactivity, Reliability and Due Process, A Reply to Professor Mishkin", 33 U. Chi. L. Rev. 719, 757-68 (1966).

officer's warnings to defendant were not adequate under the Miranda case, supra.

We come now to the crucial point of whether or not defendant made his statements in the course of "custodial interrogation". Unless the statements were made in the course of "custodial interrogation", there would be no need for the officer to advise defendant of his constitutional rights. It must be noted that on the occasion of the first questioning, the police officer asked defendant to get into the police car, and that at least some of the questioning took place in the police barracks. Questioning the following day was done at defendant's home. The question is whether, on either occasion, defendant was the focus of the investigation as the accused (the rule of Escobedo) or whether he had been deprived of his freedom of action *in any way* (the Miranda rule). Even though defendant entered the police car at the request of the officer on February 28th, he was thereafter taken to the police barracks for questioning. We are of the opinion that defendant's freedom of action was curtailed by these procedures. Furthermore, when the second period of interrogation occurred the following day, it could fairly be said that at that point the investigation was "focused" upon defendant as the accused.

We conclude that defendant's statements to the police, which were admitted at the trial of the case, were made in the course of custodial interrogation. Having already concluded that the constitutional rights mandated by the Miranda case were not fully explained by the officer to defendant, we have no choice but to grant defendant's motion for a new trial.

We do not deem it necessary to discuss and rule upon the other reasons assigned by defendant for a new trial.

And now, September 1, 1967, a new trial is ordered.