502 A.2d 1354

COMMONWEALTH of Pennsylvania, Appellant,

v.

Wayne D. ELSLAGER, and Danny Thomas Perry, Appellees.

Superior Court of Pennsylvania.

Submitted June 18, 1985.

Filed Jan. 10, 1986.

218

John M. Dawson, Assistant District Attorney, Meadville, for Com., appellant.

Bruce A. Barrett, Assistant Public Defender, Meadville, for Elslager, appellee.

Anthony Vardaro, Meadville, for Perry, appellee.

Before ROWLEY, OLSZEWSKI and DEL SOLE, JJ.

DEL SOLE, Judge:

This is an appeal by the Commonwealth from the Order of the Court of Common Pleas of Crawford County (per

Judge Robert L. Walker) entered December 27, 1983, granting Appellee's, Wayne D. Elslagers' and Danny Thomas Perrys', Motions for New Trial and suppression of statements made by Appellees as well as suppression of the contents of a duffle bag.[1]

Jurisdiction of this case is conferred on the Superior Court of Pennsylvania by virtue of 42 Pa.C.S.A. § 742. The Commonwealth has the right to take this appeal pursuant to Pa.R.App.P. 311(a)(5).

Wayne Elslager and Danny Perry were tried nonjury before the Honorable Robert Walker and found guilty of robbery [2] and conspiracy to commit robbery.[3] At trial, the Commonwealth relied upon incriminating evidence including statements each defendant gave to the police admitting their role in the robbery and statements advising the police of the location of various items used in the robbery. Each defendant had sought to have his statement and the various items seized by the police suppressed at a pre-trial hearing. The defendant's motions were denied. After the filing of post-verdict motions, the trial judge granted the defendants a new trial and ordered the defendants' statements and the various items located by the police as the result of the defendants' statements suppressed.

The Commonwealth requests that this Court reverse the grant of new trial and reinstate the guilty verdicts. In support of its' position, the Commonwealth argues that a) in the absence of new evidence, the post-trial court erroneously overruled an interlocutory suppression order of the same court in the same case, b) in the totality of the circumstances, defendants knowingly and voluntarily gave oral and written statements which were admissible and not grounds for ordering a new trial and c) given the notice requirement of 42 Pa.C.S.A. § 9712(b) the District Attorney has discre-

---

1. The Order also denied Defendant's Motions In Arrest of Judgment, denied all other requests for suppression of evidence and vacated Defendants waiver of jury trial.

2. 18 Pa.C.S.A. § 3701.

3. 18 Pa.C.S.A. § 903.

tion in invoking the five year firearm enhancement provisions of the Mandatory Sentencing Act.

Initially, the Commonwealth raises an apparent procedural issue. It is argued that absent new evidence, the post-trial court erroneously overruled an interlocutory suppression order of the same court in the same case. In support of its position, the Commonwealth argues "the suppression court's determination is to be final except in the case of evidence not earlier available." *Commonwealth v. Berkheimer*, 501 Pa. 85, 91, 460 A.2d 233, 236 (1983). This is in accord with Pa.R.Crim.P. 323(j) which provides in part:

> If the court determines that the evidence shall not be suppressed, such determinations shall be final, conclusive and binding at trial, except upon a showing of evidence which was theretofore unavailable ...

Furthermore, it is noted that "it is well established that *absent some new evidence*, it is improper for a trial judge to overrule an interlocutory order by another judge of the same court in the same case." *Commonwealth v. Eck*, 272 Pa.Super. 406, 409, 416 A.2d 520, 522 (1979) (Emphasis added). Additionally, the Commonwealth directs this court to *Commonwealth v. Monarch*, 330 Pa.Super. 165, 479 A.2d 491 (1984) which cites *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971) as authority that "a favorable ruling at the suppression hearing relieve(d) the Commonwealth of the burden of proving a second time at trial that its evidence was constitutionally obtained(.)" *Monarch*, 330 Pa.Super.Ct. 175, 479 A.2d at 496.

Having set forth the applicable law, the Commonwealth notes:

> In the case at bar, the record clearly shows that defendants failed to introduce *any* evidence, let alone new evidence sufficient to justify a reversal of the pre-trial order. (See, N.T. Trial, May 26, 1983, p. 38). In fact, testimony given by the Commonwealth's witnesses at the suppression hearing was admitted by stipulation to the trial record. (N.T. Trial, p. 3–4). Thus, the testimony before the post-trial motion judge was identical to the

testimony before the pre-trial motion judge. As noted above, existing Pennsylvania law mandates that the order of the suppression court is binding in the absence of new evidence. Because the record in this case is *identical,* the Commonwealth fails to see how reversal of the suppression court can possibly be justified.

Brief for Appellant at 10.

■ For the very reason that the Commonwealth fails to see how reversal of the suppression court can possibly be justified, this Court finds that the post-verdict motions court acted well within its authority in reversing the suppression courts order.

We begin by recognizing that the filing of post-trial motions is for the purpose of assuring the efficient operation of the judicial process and allowing the trial court the "opportunity to rectify errors and obviate the delay and expense of appellate review." *Commonwealth v. Perry,* 279 Pa.Super. 32, 36, 420 A.2d 729, 731 (1980). "The function of the court en banc is to review the rulings of the suppression hearing judge and the trial judge. (citations omitted) Thus, the court en banc sits as a 'higher' tribunal than the trial court and serves as the initial step in the appellate review of trial proceedings." *Commonwealth v. Oakes,* 481 Pa. 343, 347, 392 A.2d 1324, 1326 (1978). Citing *Commonwealth v. Ware,* 438 Pa. 517, 522–523, 265 A.2d 790, 793 (1970) our Supreme Court has held that "while a court en banc cannot overrule the findings of fact of the suppression judge, it can reverse on the basis of legal conclusions drawn from those facts. To allow any other result would undermine the function of the court en banc." *Commonwealth v. Youngblood,* 453 Pa. 225, 228, 307 A.2d 922, 924 (1973).

As the Commonwealth has aptly pointed out, "the testimony before the post-trial motion judge was identical to the testimony before the pre-trial motion judge." Brief for Appellant at 10. This in and of itself does not inexorably lead to the conclusion that *DeMichel* and *Monarch* foreclose the post-trial motion court from reversing the suppression

court. *Ware* and *Youngblood* obviously require reversal of the suppression court when it has erred in the legal conclusions it has drawn from the facts. *DeMichel* is concerned with burden of proof, specifically, "a favorable ruling at the suppression hearing relieves the Commonwealth of the burden of proving a second time at trial that its evidence was constitutionally obtained ..." *DeMichel,* 277 A.2d at 162. Similarly, in *Monarch,* we were concerned with burden of proof and held:

> [T]he post-trial motion court was erroneous in its belief that the Commonwealth had the burden of proving, again, at trial that the police were acting under the mantle of constitutional authority. On the contrary, it was for the defense to prove 'by a preponderance of *new* evidence at trial' the negative of such a proposition.

*Monarch,* 330 Pa.Superior Ct. 175, 479 A.2d at 496.

The Commonwealth's reliance on Pa.R.Crim.P. 323(j) is likewise misplaced. Additionally, the binding nature of a determination under rule 323 "is limited to the time of 'trial' in its popular sense, that is, through verdict and until the case goes into the hands of the court en banc." *Commonwealth v. Bonser,* 215 Pa.Super. 452, 455, 258 A.2d 675, 678 (1969).

The post-trial motion court in the case at bar was confronted with a question of law, not of fact. The facts are uncontroverted and as the Commonwealth has indicated, available to both the suppression court and the post-trial motion court.

The post-trial motion court found in part:

Officer Burk told Elslager that if he cooperated, they would not charge him with the section of the Crimes Code which required a mandatory five year sentence for crimes committed with a firearm. This promise induced Elslager to make a written statement in which he admitted to committing the robbery, acknowledging that a gun was involved. Officer Burk then interviewed Perry. He also made a written statement that he participated in the robbery and that a gun was used. Perry's statement was

taken after Officer Burk also told him that he would not be charged with a firearm violation which carried a five year mandatory penalty ...

(Opinion Sur Defendants' Motion For A New Trial And In Arrest Of Judgment At 2.) This testimony was available and elicited at the suppression hearing. At the suppression hearing, the following dialogue took place with officer Burk:

Q. Now, did you make any promises to Elslager as part of your interview?

A. We told him that if he was cooperative.

Q. You said, we. Who is we?

A. Officer Beach was in and out. It was basically me, I told him that if he was cooperative, we wouldn't charge him with the crimes committed with a firearm because we understand that carried a five year sentence with that charge.

(R.R. 32a)

Q. Other than your representation to him that you would indicate to the Court his cooperation which you said you do in all cases, did you make any other promises to Perry?

A. The same as I did to Elslager, that he would not be charged with crimes committed with a firearm which carries a five year penalty ...

(R.R. 34a)

In determining that the statements of the defendants should have been suppressed, the post-trial motion court held:

The defendants were given their *Miranda* warnings but only after the promise was made did they waive those rights and make statements confessing their participation in the crime. Such a significant promise made in relation to sentencing undercut the effect of the warnings contained in the statement of rights read to each defendant. The procurement of a confession in this manner is not voluntary. It is not a product of free and unconstrained

choice. It is a product of a promise. The oral and written statements of the defendants should have been suppressed.

(Opinion Sur Defendants' Motions For A New Trial And In Arrest Of Judgment At 6.)

With respect to the duffle bag, the post-trial motion court found:

> Also subject to suppression was the duffle bag and its contents recovered by police when Elslager directed them to its location. The defendant divulged its location as part of his cooperation induced by the police promise. As a product of that promise, it is fruit of the poisoned tree, and should have been suppressed. (citation omitted).

(Opinion Sur Defendants' Motion For A New Trial And In Arrest Of Judgment At 7.)

Clearly, the post-trial motion court had the authority to reverse the suppression judge on the basis of legal conclusions drawn from the facts. "On review, our responsibility is 'to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings.'" *Commonwealth v. Petrino*, 332 Pa.Super. 13, 24, 480 A.2d 1160, 1165 (1984); *Commonwealth v. Hubble*, 318 Pa.Super. 76, 464 A.2d 1236, 1237 (1983); Quoting *Commonwealth v. Goodwin*, 460 Pa. 516, 521, 333 A.2d 892, 895 (1975).

■ Given officer Burks testimony, the record supports the factual finding of the trial court that statements given by the defendants confessing their participation in the crime and revealing the location of the duffle bag and its contents was the direct result of a police promise. The promise was not to charge the defendants with the section of the Crimes Code which required a mandatory five year sentence for crimes committed with a firearm. "The Commonwealth has the burden of proof as to voluntariness; it must be shown by a preponderance of the credible evidence." *Commonwealth v. Kuhn*, 327 Pa.Super. 72, 78, 475 A.2d 103, 105

(1984) citing *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968). "An appellate court does not weigh evidence or pass upon the credibility of witnesses, and there is no basis for us to hold as a matter of law that the court's finding of voluntariness of the confession was not adequately supported and well within the courts discretion." *Kuhn,* 327 Pa.Superior Ct. 78–79, 475 A.2d at 106, citing *Commonwealth v. Smith,* 447 Pa. 457, 461, 291 A.2d 103, 104 (1972).

"(A) confession induced by a promise of immunity from a person in apparent authority to perform the promise is involuntary ... A fortiori, a waiver of rights cannot be considered voluntary where it is induced by promises of immunity from such a person." *Commonwealth v. Peters,* 473 Pa. 72, 86, 373 A.2d 1055 (1977). We agree with the trial court.

The defendants were given their *Miranda* warnings but only after the promise was made did they waive those rights and make statements confessing their participation in the crime. Such a significant promise made in relation to sentencing undercut the effect of the warnings contained in the statement of rights read to each defendant. The procurement of a confession in this manner is not voluntary. It is not a product of free and unconstrained choice. It is a product of promise. The oral and written statements of the defendants should have been suppressed.

(Opinion Sur Defendants' Motions For A New Trial And In Arrest Of Judgment At 6.)

■ As fruit of the poisoned tree, the duffle bag and its contents should have also been suppressed.

Finally, the Commonwealth argues that given the notice requirement of 42 Pa.C.S.A. § 9712(b)[4], the District Attor-

---

**4.** 42 Pa.C.S.A. § 9712(a) provides:

Any person who is convicted in any court of this Commonwealth of murder of the third degree, voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i)(ii) or (iii) (relating to robbery), aggravated assault as

ney has discretion in invoking the five year mandatory sentence provisions. We need not address that issue given the facts of this case.[5] Here, as indicated, it was the police who originally attempted to exercise discretion in invoking the five year mandatory sentence provisions. The mandatory sentencing procedure is not a matter of discretion for the police in charging an offense. "(S)ection 9712 applies only in the event the defendant is convicted of one of the offenses enumerated therein and thus relates solely to the sentencing proceedings." *Commonwealth v. Wright*, 508 Pa. 25, ——, 494 A.2d 354, 357 (1985). As a result, the appellees waiver of their privilege against self-incrimination was not knowingly, intelligently and voluntarily made. The statements of the appellees were therefore involuntary.

Accordingly, the order of the trial court granting the appellees a new trial and suppressing certain evidence is affirmed.

defined in 18 Pa.C.S. § 2702(a)(1) (relating to aggravated assault) or kidnapping, or who is convicted of attempt to commit any of these crimes, shall, if the person visibly possessed a firearm during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. 42 Pa.C.S.A. § 9712(b) provides: Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing.

5. While we do not address today the issue of prosecutorial discretion with respect to 42 Pa.C.S.A. § 9712 we note this issue has recently been discussed in *Commonwealth v. Anderson*, 345 Pa.Super. 407, 411–412, 498 A.2d 887, 889 (1985).