## Commonwealth *v.* Boyer, Appellant.

*Thomas A. Ehrgood*, with him *Ehrgood and Ehrgood*, for appellant.

*David J. Brightbill*, Assistant District Attorney, with him *George E. Christianson*, District Attorney, for Commonwealth, appellee.

Argued September 11, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

OPINION PER CURIAM, November 28, 1972:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant was convicted of possession of a small, but unspecified amount of marijuana and LSD in March of 1972. In July, a fine of $300 was imposed and appellant was sentenced to a period of imprisonment of not less than two months and no more than twelve months, with a supersedeas granted by the court below.

Appellant contends that items of physical evidence were improperly admitted at trial being the result of

an illegal search and seizure. This contention is sound and requires that his conviction be reversed.

The testimony taken at the pretrial suppression hearing and at the trial revealed the circumstances leading to the seizure of the evidence. Two police officers were investigating a complaint given to them by a citizen that three "hippie types" were seen in a green Chevrolet placing a package near a snow fence on State Route 419. Suspecting this to be a possible drug pick up, the officers went to the scene and looked for the package. None was found, but the police remained at the scene. Appellant then approached, alone, in a red Rambler automobile.

Believing that he should check this vehicle, one of the officers pursued and stopped appellant. He was told, over a loud speaker, to keep his hands in plain view. After inquiring about the reason for his being stopped, appellant was told by the police that a drug investigation was underway.

At this point there is conflict in the testimony. Appellant stated that he was directed to open his trunk. The police testified that he volunteered the display of the trunk contents. The conflict was resolved in favor of the police. Nothing, however, was found in the trunk.

Appellant then re-entered his car and one of the officers observed a console between the seats. The officer then stated: "Would you mind opening that?" and appellant opened it. A pipe wrapped in aluminum foil was observed, whereupon appellant was placed under arrest and given his warnings. A search warrant was then obtained authorizing a search of the car and appellant's house. The subsequent searches uncovered a small, "nickel bag" of marijuana in the car, and a vial of marijuana seeds, a vial of "suspected LSD", cigarette papers, and a pipe in the home of appellant. This

evidence was admitted, over objection, after appellant's motion to suppress had been denied.

Appellant argues that the stopping of his car was not supported by probable cause of reasonable suspicion, was not related to any purpose of traffic regulation, and, that therefore, the subsequent search was illegal necessitating the suppression of the evidence.

The lower court, in the opinion of trial judge GATES, and the en banc opinion of Judge MEYER, held that the initial stopping of the vehicle was perfectly legal under the Act of April 29, 1959, P. L. 58, §1221(b), 75 P.S. §1221(b), which provides: "(b) Any peace officer, who shall be in uniform, and shall exhibit his badge or other sign of authority, shall have the right to stop any vehicle, upon request or signal, *for the purpose* of inspecting the said vehicle, as to its equipment and operation, or manufacturer's serial number or engine number, and securing of such other information as may be necessary." (emphasis added)

The police officer's testimony indicates, without doubt, that the stopping of appellant's automobile was not for any of these purposes, but for the investigation of a drug complaint. This statute cannot be construed to authorize the stopping of any vehicle for the purpose of criminal investigation where, absent any purpose relating to vehicular regulation, there does not exist probable cause or the slightest suspicion that the operator was, or is involved in criminal activity. To do so would place in serious jeopardy the security of all persons operating a motor vehicle to be free from unreasonable intrusions. While different rules have been fashioned for searches of automobiles which recognize the practicalities of law enforcement in regard to the warrant requirements, *Carroll v. United States,* 267 U.S. 132, 156, 45 S. Ct. 280 (1925), no exceptions exist in regard to the probable cause or reasonableness

requirements of the Fourth Amendment. See *Chambers v. Maroney,* 399 U.S. 42, 90 S. Ct. 1975 (1970); *Commonwealth v. Lewis,* 442 Pa. 98, 275 A. 2d 51 (1971).

"It is quite plain that the Fourth Amendment governs seizures of the person which do not eventuate in a trip to the station house and prosecution for a crime— arrests in the traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person . . . when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen, [we may] conclude that a seizure has occurred." *Terry v. Ohio,* 392 U.S. 1, 16, n. 16, 88 S. Ct. 1868 (1968); see *Commonwealth v. Hicks,* 434 Pa. 153, 253 A. 2d 276 (1969). *Terry* and *Hicks* make it clear that the stopping of a person under a show of authority or physical force is a seizure of the person and must meet the Fourth Amendment standard of reasonableness.

That test does not require probable cause before a person may be momentarily seized for purpose of criminal investigation. Rather, *Terry* and *Hicks* do require that there be some unusual and suspicious activity on the part of the individual which leads the police officer to reasonably conclude that criminal activity is afoot.

In the instant case, the seizure of appellant was not in furtherance of any of the purposes enumerated in the statute; no motor vehicle violation occurred; no probable cause existed; and there was no reasonable suspicion to believe appellant to be engaged in criminal activity.[1] Absent any of these justifications, the

---

[1] The only suspicious act of appellant noted by the officer was that appellant "stared" at the officers as he drove by. This can hardly be equated to a reasonable suspicion.

stopping of appellant, being an intrusion upon personal security, was in violation of the appellant's Fourth Amendment rights.

Having established the primary illegality, the question becomes whether the seizure of the evidence was the result of an "exploitation of that illegality or, instead, [came about] by means sufficiently distinguishable to be purged of the primary taint". *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S. Ct. 407 (1963), citing Maguire, *Evidence of Guilt,* 221 (1959). The taint may be removed by a showing that the seizure of the evidence resulted sufficiently from an act of free will or that the connection between the illegality and the seizure became so attenuated as to purge the taint. *Commonwealth v. Rowe,* 445 Pa. 454, 282 A. 2d 319 (1971). The burden of proving the removal of the taint by voluntary acts, or the tenuous or vague connection between the illegal act and the seizure of the evidence rests upon the Commonwealth. *Commonwealth v. Bishop,* 425 Pa. 175, 228 A. 2d 661 (1967). The mere showing of some questionably voluntary act by the accused is not always sufficient to cure the initial illegality. *Wong Sun v. United States,* supra; *United States v. Watson,* 189 F. Supp. 776 (S.D. Cal. 1960). Rather, the act must be voluntary in the traditional sense *and* free from any element of coerciveness attending the initial illegal seizure of the person. *Commonwealth v. Bishop,* supra.

Under the facts of the instant case, the Commonwealth's burden has not been met. Appellant was under police directives as soon as he alighted from the car. He was not asked if he would consent to a search of the console, but whether he would mind opening the console. This statement does not imply that consent is being courted to conduct a search and that he can,

therefore, withhold that consent.[2]  Rather, the language employed implies just as strongly that the officer intends to search and is merely seeking aid in furtherance of that intent.  Moreover, the close proximity in time between the initial illegality and the subsequent seizure is strong evidence of the continuing connection between the two.  *Commonwealth v. Rowe,* supra, n. 7; *Commonwealth v. Bishop,* supra, n. 4.  *Commonwealth ex rel. Craig v. Maroney,* 348 F. 2d 22, 29 (3d Cir. 1965).  Under the circumstances of this case, the state has not met its burden of disproving taint.  I would hold, therefore, that the seizure of the evidence was the result of an exploitation of the initial illegal seizure of the person, and that the evidence should have been excluded.

The judgment of sentence should be reversed, and a new trial granted.

CERCONE and PACKEL, JJ., join in this dissenting opinion.

---

[2] An important element in determining whether consent is voluntary is the language used by the police seeking such consent.  *United States ex rel. Harris v. Hendricks,* 423 F. 2d 1096 (3d Cir. 1970).