**Commonwealth v. Butler**

*Christopher Shaw, assistant district attorney,* for Commonwealth.

*Matthew B. Taladay,* for defendant.

HENRY, *P.J.,* October 5, 1994—Presently before the court is the defendant's amended pretrial omnibus motion to suppress evidence. For the reasons which follow we would grant the defendant's motion.

Sometime prior to August 21, 1993, Officer Bickle of the Brookville Borough Police Department received an anonymous tip that the defendant was growing marijuana behind his shed at his residence in Knox Township, Jefferson County, Pennsylvania. Various members of the Jefferson County Drug Task Force conducted an investigation to verify the tip in the late night hours of August 21, 1994. There was no sign of illegal activity or contraband on the defendant's residence that was visible from the adjacent public roadway. To investigate the tip Officers Holbren and Melillo of the task force

approached the defendant's residence through a wooded area located by the residence. Upon reaching the tree line at the edge of the woods, the officers crawled across the defendant's mowed lawn to the rear of an outbuilding that was used as a guest house/part-time residence which was located approximately 60 feet from the defendant's residence. Upon reaching the rear of the outbuilding the officers observed what they believed to be marijuana plants growing in large buckets. Officer Holbren then broke off a leaf from one of the plants and seized it for testing and evidence.

Officers Holbren and Melillo then returned to their Brookville headquarters and engaged in discussions concerning their find. The officers became aware of potential problems with their search and as such they contacted Officer Johnson who was called in as an "independent observer" to see if he could identify the plants growing behind the outbuilding from a vantage point inside of the tree line. When Officer Johnson arrived at the Brookville headquarters he was informed of the tip, and the events that had taken place that evening. Officer Johnson also saw the evidence that was seized and heard the exact location of the plants.

Officer Johnson then conducted a subsequent search at the defendant's residence in the early morning hours of August 22, 1993. Officer Johnson was escorted back to the defendant's residence by Officers Holbren and Melillo. These two officers then guided Officer Johnson through the woods toward the defendant's residence. The officers did not accompany Officer Johnson to the tree line, but rather stopped at some point in the woods and directed Officer Johnson to proceed in a direction that would enable him to see the rear of the outbuilding. When Officer Johnson reached the tree line approximately 50 feet from the rear of the outbuilding he was

able to view, while still in the tree line, what he believed was marijuana growing in five gallon buckets.

After Officer Johnson radioed back what he saw, officers from the task force knocked on the door of the defendant's residence. The defendant answered the door and was informed by the officers that they had found marijuana plants growing behind his outbuilding. At that time the defendant consented to a search of his residence and surrounding property and stated that the plants were his. Subsequent to his consent, the officers seized various growing plants, packed marijuana, and drug paraphernalia.

The Commonwealth has the burden of proving by a preponderance of the evidence that the search and seizures in this case did not violate the defendant's Fourth Amendment rights. *Commonwealth v. Silo*, 480 Pa. 15, 389 A.2d 62 (1978), *cert. denied*, 439 U.S. 1132, *reh'g denied*, 440 U.S. 969. In the case at bar the parties have stipulated that the area behind the outbuilding where the marijuana plants were located was part of the "curtilage." As such, when Officers Melillo and Holbren approached that area within the "curtilage" and took a leaf from a plant without a search warrant they violated the defendant's Fourth Amendment rights and all evidence they obtained is the fruit of an illegal search and should be suppressed. See *Commonwealth v. Robbins*, 216 Pa. Super. 233, 263 A.2d 761 (1970); see also, *Mapp v. Ohio*, 267 U.S. 643, 81 S.Ct. 1684 (1961).

Next, the Commonwealth argues that although the first search by Officers Melillo and Holbren was illegal, the evidence of the plants behind the outbuilding is still admissible since Officer Johnson made a subsequent search and visually identified the marijuana plants and as such he is an "independent source" and the plants

would have been inevitably discovered. We find that the Commonwealth's argument that Officer Johnson constituted an independent source is without merit. As the Second Circuit Court of Appeals pointed out in *United States v. Paroutian,* 299 F.2d 486 (2d Cir. 1962):

"An unlawful search taints all evidence obtained at the search or through leads uncovered by the search. This rule, however, extends only to facts which were actually discovered by a process initiated by an unlawful act. If information which could have emerged from an unlawful search in fact stems from an independent source, the evidence is admissible ... On the other hand, a showing that the government had sufficient independent information available that in the normal course of events it might have discovered the questioned evidence without an illegal search cannot excuse the illegality or cure the taint. Such a rule would relax the protection of the right to privacy in the very cases in which, by the government's own admission, there is no reason for an unlawful search." *Id.* at 489.

Officer Johnson's subsequent search was not an "independent" investigation based on information obtained solely through an informant prior to the initial illegal search by Officers Holbren and Melillo. Rather, Officer Johnson's investigation was tainted by the initial search conducted by the other officers. Officer Johnson at the time of his search was not acting on the tip from the informant, rather he was acting on the information he learned about from the first illegal search and was acting to remedy a botched-up attempt at a search. Officer Johnson's search was tainted because he knew about the first illegal search, was told about the exact location of the plants based on facts discovered in the first illegal search, saw the leaf that was seized during the first search and was led through the woods and directed

to a vantage point by the officers that conducted the first search. Thus, Officer Johnson's search was not independent and is not purged of the primary taint of the first illegal search. See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407 (1963). Because of the taint on Officer Johnson's search, any evidence gathered by his search must be suppressed as fruit of the poisonous tree. We also find that there is no evidence on the record that supports the Commonwealth's claim that this evidence would be inevitably discovered absent the illegal search.

Since we have found that Officer Johnson's search was tainted by the first illegal search and hence it should be suppressed, we need not pass judgement on the argument, raised by the defendant, that Officer Johnson's search violated the defendant's right to privacy under the Fourth Amendment by invading the "curtilage area."

The Commonwealth next argues that even if the initial search was illegal and the subsequent search was the fruit of the poisonous tree, the defendant's consent to a search of his property cures any prior illegal searches and as such all the evidence obtained should be admitted. The Commonwealth points our attention to a case that was before this court on a prior occasion, *Commonwealth v. Sarvey*, memorandum opinion of the Pennsylvania Superior Court no. 01796 PGH 1993 filed August 2, 1994, to support the contention that the defendant's waiver and consent in this case was voluntary and free from coercion. However, the *Sarvey* case is distinguishable from the case at bar. In *Sarvey*, the Superior Court of Pennsylvania found that a consent to search was voluntary after the defendant had been confronted with evidence the police had obtained. However, the evidence that the police confronted the defendant with in *Sarvey* was legally obtained evidence,

unlike in the case at bar where the evidence was illegally obtained.

The defendant counters the Commonwealth's argument with the argument that his consent is not valid because he was coerced by being confronted with illegally obtained evidence. For a consent to justify a warrantless search, "The consent must ... be voluntarily given and not the result of duress or coercion, expressed or implied." *Commonwealth v. Scatena*, 332 Pa. Super. 415, 481 A.2d 855 (1984), *rev'd on other grounds*, 508 Pa. 512, 498 A.2d 1314 (1985). The Pennsylvania Supreme Court pointed out in *Commonwealth v. Rowe*, 445 Pa. 454, 282 A.2d 319 (1971), the Commonwealth has the burden of proving that the primary taint had been dissipated or that confession is free from any element of coerciveness due to the use of illegally seized evidence. In *Rowe*, the defendant was charged with robbery murder. The police confronted the defendant and told him that they had the murder weapon, whereupon the defendant confessed. *Id.* at 456, 282 A.2d at 320. The murder weapon had been obtained by the police illegally. *Id.* The police then later showed the defendant the gun when his confession was being reduced to writing. *Id.* The court found that considering the proximity of the use of the weapon to the confession and the lack of any intervening independent circumstances to motivate the confession the lower court's decision to suppress the confession was correct. *Id.* at 460, 282 A.2d at 322.

We find the *Rowe* decision to be controlling, and in the case sub judice the defendant indicated that his waiver of *Miranda* rights and signature of the consent to search were given because he was confronted by the police with their discovery of the marijuana plants near his dwelling. While we will not delve into the

mind of the defendant, his consent and waiver followed immediately after being confronted by the police with the illegally obtained evidence of the marijuana plants behind his outbuilding, and there is no evidence of any intervening independent circumstances to motivate his waiver and consent. As such, we find that the defendant's waiver of *Miranda* warnings and his signature on the consent to search were coerced by the presentation to him of the evidence of the illegal search. As such, any evidence or statements obtained because of his waiver and consent must be suppressed.

For the foregoing reasons the defendant's amended pre-trial omnibus motion to suppress is granted.